UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH HAROLD MUECK AVALON,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 2:21-cv-02051-NJK<br><br>**ORDER**<br><br>[Docket Nos. 20, 22] |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income pursuant to Title XVI of the Social Security Act. Currently before the Court is Plaintiff's Motion for Reversal and/or Remand. Docket No. 20. The Commissioner filed a response in opposition and a cross-motion to affirm. Docket Nos. 22, 23. No reply was filed. *See* Docket.

The parties consented to resolution of this matter by the undersigned magistrate judge. *See* Docket No. 3.

**I.    BACKGROUND**

    A.    <u>PROCEDURAL HISTORY</u>

On December 27, 2017, Plaintiff protectively filed an application for supplemental social security income, alleging a disability onset date of February 1, 2017. *See, e.g.*, Administrative Record ("A.R.") 19, 195-204.[1] On May 4, 2018, Plaintiff's claims were initially denied. A.R. 82-96. On November 5, 2018, Plaintiff's claims were denied on reconsideration. A.R. 98-112. On November 9, 2018, Plaintiff filed a request for a hearing before an administrative law judge. A.R.

---

[1] During the pendency of his initial application, Plaintiff filed an amended application for benefits on February 9, 2018, based on the same disabling conditions. A.R. 205-209. At the hearing, Plaintiff amended the alleged onset date to February 9, 2018, and the ALJ construed the alleged onset date as the date of Plaintiff's initial application, December 27, 2017. A.R. 19.

137. On February 1, 2021, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ John W. Rolph.  A.R. 40-81.  On February 11, 2021, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision.  A.R. 19-33.  On September 24, 2021, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  A.R. 1-7.

On November 15, 2021, Plaintiff commenced this action for judicial review.  Docket No. 1.

B.     THE DECISION BELOW

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. A.R. 19-33.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 27, 2017, the alleged onset date. A.R. 21.  At step two, the ALJ found that Plaintiff has the following severe impairments: cervical, thoracic, and lumbar spine problems with pain/cervicalgia/polyneuropathy/post-laminectomy syndrome status post cervical fusion/anterior cervical discectomy and fusion (2003); obesity/overweight; and history of chronic obstructive pulmonary disease (20 C.F.R. 416.920(c)).  A.R. 21-25.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  A.R. 25-26.  The ALJ found that Plaintiff has the residual functional capacity to

> Perform light work as defined in 20 CFR 416.967(b), except that the claimant is able to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently.  The claimant can stand and/or walk six hours in an eight-hour day.  The claimant can sit six hours in an eight-hour day.  The claimant may occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.  The claimant may never climb ladders, ropes, or scaffolds. With the upper extremities, the claimant may frequently handle, finger, and feel.  The claimant may frequently engage in work tasks requiring flexion, extension, and rotation of the neck.  The claimant must avoid more than occasional exposure to extreme heat, cold, vibration, and concentrated pulmonary irritants such as fumes, odors, dust, gases, chemicals, and poorly ventilated spaces.  The claimant must avoid all exposure to hazards such as dangerous moving machinery and unsecured heights.

A.R. 26.  *See also* A.R. 26-31.  At step four, the ALJ found Plaintiff is able to perform past relevant work as a software engineer, which does not require the performance of work-related activities

2

precluded by his residual functional capacity.  A.R. 31-33.  Based on all of these findings, the ALJ found Plaintiff not disabled through the date of the decision.  A.R. 33.

## II. MERITS ARGUMENTS

Plaintiff raises four overarching issues: (1) whether the ALJ erred by not accounting for all of the mental limitations he found in the residual functioning capacity; (2) whether the ALJ erred by not properly evaluating Plaintiff's mental impairments at Step Two; (3) whether remand is required in light of constitutional concerns regarding the tenure of former Commissioner Andrew Saul; and (4) whether remand is required because former Acting Commissioner Berryhill held the position for significantly longer than authorized by statute and, therefore, the ALJs and Appeals Council Judges appointed during the excess period had no legal authority to adjudicate the case.  The Court will address Plaintiff's merits contentions first.  *Cf. United States v. Raines*, 362 U.S. 17, 22 (1960) (addressing preference against "unnecessary pronouncements on constitutional issues").

### A.  DISABILITY DETERMINATION STANDARD

The standard for determining disability is whether a social security claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A).  The disability determination is made by following a five-step sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).  The first step addresses whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  When an individual is pursuing a claim under Title II, the claimant must also meet insurance requirements.  20 C.F.R. § 404.130.  The second step addresses whether the claimant has a medically determinable impairment that is severe or a combination of impairments that significantly limits basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  There is then a

determination of the claimant's residual functional capacity, which assesses the claimant's ability to do physical and mental work-related activities. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits. 42 U.S.C. § 405(g). The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.*

B.  MENTAL LIMITATIONS

Plaintiff submits that the ALJ erred by failing to consider his mild limitations in his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. Docket No. 20 at 9-16. Plaintiff submits that, although the ALJ made findings as to mild mental limitations at Step 2 of the analysis, the ALJ did not explicitly include any of these mental limitations in his residual functional capacity. *Id.* The Commissioner submits that the ALJ properly considered these limitations and reasonably concluded that they would not impose any work-related limitations or restrictions and, therefore, their absence from the residual functional capacity was proper as the ALJ found that the limitations did not limit Plaintiff's ability to perform his past relevant work. Docket No. 22 at 6-13.

The residual functional capacity is what an individual can do despite his "physical, mental, nonexertional, or other limitations." *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). In making this determination, the ALJ considers all relevant evidence, including residual functional capacity determinations made by consultative examiners,

4

agency experts, and other doctors. *See* 20 C.F.R. §§ 404.1513(c), 404.1545(a)(3), 416.913(c), 416.945(a)(3). The residual functional capacity determination does not need to copy the exact opinion of any particular doctor, but "the ALJ is responsible for translating and incorporating clinical findings into a succinct" residual functional capacity. *Rounds v. Commissioner*, 795 F.3d 1177, 1185-86 (9th Cir. 2015), *as amended* 807 F.3d 996, 1006 (9th Cir. 2015).

ALJs are required to consider all medically determinable impairments, including those that are not "severe," in assessing the residual functional capacity. 20 C.F.R. § 404.1545(a)(2); see *also Hutton v. Astrue*, 491 Fed.App'x. 850, 850 (9th Cir. 2012). "Mild mental impairments are by definition those that have no more than a minimal limitation on the ability to work and, therefore, translate in most cases into no functional limitations." *Vandiver v. Colvin*, 2016 U.S. Dist. LEXIS 186060, at *14 (D. Nev. June 27, 2016) (internal citations omitted). The fact that an ALJ fails to explicitly address a mild limitation in the section of her order formulating a residual functional capacity does not run afoul of the requirements of 20 C.F.R. § 404.1545(a)(2), so long as the ALJ incorporates the findings by reference in assessing the residual functional capacity. *Webb v. Colvin*, 2013 U.S. Dist. LEXIS 158387, at *31-35 (D. Nev. Aug. 14, 2013), *report and recommendation adopted by* 2013 U.S. Dist. LEXIS 158385 (D. Nev. Nov. 5, 2013).

Here, the ALJ discussed the record that existed with respect to any difficulties Plaintiff had in mental functioning in conducting the Step 2 analysis. A.R. 23-25. The ALJ considered the four broad functional areas of mental functioning set out in the regulations in 20 C.F.R., Part 404, Subpart P, Appendix I. *See id.* The ALJ determined that Plaintiff had mild limitations in all four areas of mental functioning. *Id.*

The ALJ noted that most of Plaintiff's mental status examinations, other reports of observations of Plaintiff, and Plaintiff's own testimony supported no findings of problems with understanding, remembering, or applying information but rare findings of impaired memory supported finding a mild limitation. A.R. 24. The ALJ also found a mild limitation in Plaintiff's ability to interact with others. *Id.* In supporting this finding, the ALJ found that the provided examinations noted that Plaintiff was "cooperative and demonstrated appropriate eye contact," had

normal speech, was pleasant, and had no reported problems socializing with others. *Id.* The ALJ noted that Plaintiff's social contacts were limited and found a mild limitation in this area. *Id.*

The ALJ found a third mild limitation in Plaintiff's ability to concentrate, persist, or maintain pace. *Id.* In making this finding, the ALJ relied on a Social Security employee's observation that Plaintiff had difficulties concentrating in a telephone interview for processing his initial application for benefits. *Id.* The ALJ also relied on examinations calling Plaintiff's attention span fair. *Id.* In finding that this limitation was only mild, the ALJ noted that both Plaintiff and his wife provided testimony or evidence that he could complete tasks or that were indicative of the ability to focus and concentrate. *Id.*

The ALJ found one final mild mental limitation in the functional area of adapting or managing oneself. *Id.* The ALJ discussed Plaintiff's testimony and mental examinations that documented appropriate personal care activities and hygiene. *Id.* The ALJ also discussed Plaintiff's testimony that he could "prepare simple meals, perform household chores, go out alone, shop, and manage money." *Id.*

In considering all four mental functioning areas and the other available evidence, the ALJ determined that no severe mental limitations or indications existed that demonstrated more than a minimal limitation in Plaintiff's ability to do basic work activities. A.R. 24-25. The ALJ also found that the prior administrative medical findings were supportive of limitation findings, both in the four broad areas of mental functioning and his determination that these limitations did not impair Plaintiff's ability to perform work activities. A.R. 25.

The ALJ incorporated this discussion into his residual functional capacity assessment discussion. *See id.* ("The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis"). The ALJ also "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in formulating the residual functional capacity and discussed that this included determining whether there was an underlying medically determinable mental impairment and the extent to which the impairment limited the Plaintiff's work-related activities. A.R. 26. The Court finds that the ALJ's decision is sufficient to establish

incorporation of the Step 2 analysis into the residual functional capacity assessment. *See Vandiver v. Colvin*, 2016 U.S. Dist. LEXIS 186060, at *15-16 (D. Nev. June 27, 2016), *report and recommendation adopted by* 2017 U.S. Dist. LEXIS 60487 (D. Nev. Apr. 19, 2017). Given the ALJ's thorough consideration of Plaintiff's mild limitations in the Step 2 analysis and his incorporation of that analysis into the residual functional capacity assessment, the undersigned is unpersuaded by Plaintiff's argument that the ALJ erred by failing to consider these mild limitations in assessing the residual functional capacity. *See, e.g.*, *Webb*, 2013 U.S. Dist. LEXIS 158387, at *31-35; *Vandiver*, 2016 U.S. Dist. LEXIS 186060, at *15-16.

The Court further finds that the ALJ's determination that these limitations were mild and did not affect Plaintiff's ability to complete work tasks is supported by substantial evidence. The record shows virtually no evidence supporting Plaintiff's position that mental limitations required additional changes to his residual functional capacity. While Plaintiff did have documented problems with anxiety, depression, and obsessive-compulsive disorder, treatment notes, assessments, and Plaintiff's own testimony establish that these conditions do not impact his ability to function, and that any residual symptoms were managed by his use of medication. *See, e.g.*, A.R. 61, 91, 106-7, 248, 266-73, 279, 471, 613-18, 632-36, 689, 938, 941, 943, 949. Moreover, Plaintiff points to no evidence to contradict the weight of the evidence in the record supporting the ALJ's determination and fails to provide any information about what changes to the residual functional capacity he believes would be appropriate. Accordingly, his argument for remand on this basis fails.

### C. STEP TWO SEVERITY ANALYSIS

Plaintiff submits that the ALJ committed legal error by misapplying the severity standard at Step 2 and concluding that Plaintiff's stroke-related complaints did not impact his functioning over a year after he suffered a stroke. Docket No. 20 at 17-20. Plaintiff contends that evidence submitted before the hearing showed that his residual stroke symptoms persisted until at least August 2019, meeting the durational requirement, and that remand is required to ensure that the ALJ considered all the relevant evidence. *Id.* at 17. In response, the Commissioner submits that Plaintiff's argument fails because, apart from his finding on the duration that Plaintiff's stroke

symptoms persisted, the ALJ separately found that any continuing symptoms related to his stroke did not cause more than minimal limitations on Plaintiff's ability to work.  Docket No. 22 at 14. The Commissioner further submits that a finding that any residual stroke-related limitations are only minimal is supported by substantial evidence as treatment records note normal cognitive functioning and Plaintiff's testimony further contradicts his arguments.  *Id.* at 14-16.

Step two of the sequential evaluation process requires the ALJ to "consider the medical severity of [the claimant's] impairment(s)."  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is one that significantly limits a claimant's physical or mental ability to basic work activities.  20 C.F.R. § 416.920(c).  The ALJ first determines that an impairment exists before deciding whether it is severe.  20 C.F.R. § 416.921.  A severe impairment "must be established by objective medical evidence from an acceptable medical source."  *Id.*[2]  An impairment is not severe when medical or other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.  20 C.F.R. § 416.922(a).   The effectiveness of treatment is a relevant factor in the ALJ's determination of the severity of symptoms.  *See* 20 C.F.R. § 416.929(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a complaint that a limitation is severe); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (holding that conditions effectively controlled with medication are not disabling for the purpose of determining benefit eligibility).

Alongside determining whether an impairment exists, the condition must also meet the durational requirement, which requires a showing that the condition must have lasted or be expected to last for a continuous period of at least 12 twelve months unless the impairment is expected to result in death.  *See* 20 C.F.R. §§ 416.909, 416.921; *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002).

---

[2] Objective medical evidence is defined as "signs, laboratory findings, or both."  20 C.F.R. § 416.913(a)(1).  The ALJ is bound to consider a range of kinds of evidence while conducting the disability determination five-step analysis.  *See generally* 20 C.F.R. § 416.913.  The ALJ must also consider other medical evidence, which is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 416.913(a)(3).

"When arguing on appeal that the ALJ failed to include a severe impairment at step two, a claimant cannot simply point 'to a host of diagnoses scattered throughout the medical record.' Rather, a claimant must specifically identify functional limitations that the ALJ failed to consider in the sequential analysis." *Geoffrey William H. v. Comm'r of Soc. Sec.*, 2020 WL 1918098, at *8 (E.D. Wash. Feb. 24, 2020) (quoting *Cindy F. v. Berryhill*, 367 F.Supp.3d 1195, 1207 (D. Or. 2019)). If the Court finds that an error occurred at step two, such error is considered harmless, and thus not demanding of remand, when the decision reflects that the ALJ considered any limitations posed by the impairment at either step four or step five of the sequential evaluation process. *Lewis v. Astrue*, 498 F.3d 90, 911 (9th Cir. 2007).

Here, the Court finds that the ALJ's findings that Plaintiff's stroke did not meet the durational requirement and was not severe are supported by substantial evidence. As to the durational requirement finding, the ALJ made a specific finding that numerous examinations of Plaintiff indicated that that he was nearly or fully recovered from his stroke within a year of the date he suffered the stroke. *See* A.R. 22.[3] The ALJ also noted that Plaintiff did not follow up with a neurologist or provider for his stroke-related symptoms after May 2018. *Id.* This finding was supported by substantial evidence. *See e.g.*, A.R. 463, 466, 468, 635, 642, 673, 938, 941, 943, 949.

Plaintiff points to two references to discussion of stroke conditions after 2018 in notes from his primary care provider that, he submits, undermine the ALJ's durational requirement finding and warrant remand. Docket No. 20 at 18. Specifically, Plaintiff focuses on a reference to cognitive functioning concerns in February 2019 and concerns about memory problems and headaches in 2019. *Id.* The ALJ's decision, however, considered each of these concerns in his evaluation of Plaintiff's medical impairments and their severity. A.R. 21-22, 24-25.

The Court finds that Plaintiff's headaches do not warrant remand. In his briefing, Plaintiff points to a medical reference to headaches, claiming that it indicates ongoing stroke-related

---

[3] In fact, Plaintiff's discharge records indicate that he was already improving significantly from the confusion symptoms and speech-related symptoms he experienced at the time of his stroke when he was discharged from the hospital the day after his stroke. A.R. 416. Within a month, Plaintiff's neurological follow-up showed 80 to 95 percent improvement. A.R. 466, 468.

symptomology. Docket No. 20 at 18. Plaintiff's representation to the Court, however, is belied by the record, which notes that Plaintiff himself told his doctor that the headaches were not related to his stroke but caused by "chronic stress" and side effects from medication he was prescribed for anxiety and depression. A.R. 677. Other records also indicate Plaintiff's attribution of the ongoing headaches to stress rather than his stroke. *See, e.g.*, A.R. 378, 523, 685, 712. The record Plaintiff relies on in his briefing further indicates that changes to his medication regime resolved the headache issue. A.R. 677. Finally, the Court notes that the ALJ expressly found that headaches had been associated with Plaintiff's stroke initially but were determined to be caused by different symptoms, which the ALJ discussed fully in other portions of his step 2 analysis. A.R. 22; *see also* A.R. 22-25, 27.

The Court finds that Plaintiff's submission about memory problems also fails. The ALJ discussed at length Plaintiff's concerns about memory problems while considering his mental limitations. A.R. 24-25. The ALJ noted that findings of impaired memory were rare and that most examinations "confirmed intact memory" and a demonstrated ability to understand and remember work tasks. A.R. 24. The Court finds that this finding was supported by substantial evidence. *See, e.g.*, A.R. 248, 471, 616-17, 635, 673, 677, 938, 941.

The Court now turns to Plaintiff's contention that the ALJ did not consider the residual effects caused by his stroke. The ALJ made specific findings as to the severity of any limitations caused by Plaintiff's stroke, specifically concluding that he "did not find this impairment meets the durational requirements for a severe impairment, nor do the effects from the claimant's stroke otherwise cause more than minimal limitations with basic work activities." A.R. 22. In reaching his determination at step two, the ALJ discussed the records from Plaintiff's treating physician indicating 80 to 95 percent improvement of neurological symptoms at various appointments within a year from the date of his stroke. *Id.* The ALJ also noted that other medical providers and records indicated that his neurological functioning continued to appear normal. *Id.* The ALJ properly considered the effects of Plaintiff's treatment and recovery in reaching his severity determination as to any residual stroke effects. *See, e.g.*, *Tommasetti*, 533 F.3d at 1040. Plaintiff points to no objective medical evidence undermining this severity assessment and directs the Court to no

10

functional limitations that should have been included but were left out of the remainder of the disability evaluation as a result of the ALJ's determination on the stroke symptoms. Moreover, the Court finds that the ALJ's severity finding was supported by substantial evidence. *See* A.R. 248, 463, 466, 471, 523, 527-28, 531, 616-17, 635, 673, 677, 685, 689-90, 712, 720, 722, 726, 938, 941.

Accordingly, The Court finds that Plaintiff is not entitled to remand on his merits-based arguments.

### III.    CONSTITUTIONAL ARGUMENTS

Having determined that remand is not warranted on the merits-based arguments presented, the Court turns to Plaintiff's constitutional challenges.[4] Plaintiff submits that he is entitled to relief on appeal based on two constitutional issues. First, Plaintiff submits that the tenure of the Commissioner of Social Security heading the agency at the time of his denial of benefits was unconstitutional because he could not be removed by the President without cause. Docket No. 20 at 21-23. Second, Plaintiff submits that the ALJ and Appeals Council Judges were not properly appointed, as Acting Commissioner Berryhill appointed them after end of her lawful term under the Federal Vacancies Reform Act ("FVRA"). *Id.* at 24-25. The Court finds that Plaintiff is not entitled to relief on either of these arguments.

The Ninth Circuit has squarely addressed the precise removal provision constitutional argument at issue in Plaintiff's briefing. *See Kaufmann v. Kijakazi*, __ F.4th __, 2022 U.S. App. LEXIS 11365 (9th Cir. 2022). In *Kaufmann*, the Court recognized that the tenure provision set forth in 42 U.S.C § 902(a)(3) violates separation of powers principles and is severable from the

---

[4] The Court notes at the outset a procedural defect in that Plaintiff did not plead either constitutional violation in his complaint. *See* Docket No. 5. Pursuant to the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Montoya v. Colvin*, No. 2:16-cv-00454-RFB-NJK, 2016 WL 890922, at *1-3 (D. Nev. Mar. 8, 2016) (applying Rule 8 in the Social Security context). Moreover, that an unpled claim is later presented through argument in substantive briefing is insufficient to preserve the claim. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008). Hence, it appears Plaintiff waived his constitutional arguments by not pleading them. *See, e.g., John R. v. Comm'r of Soc. Sec.*, No. C20-6176-MLP, 2021 WL 5356719, at *5 (W.D. Wash. Nov. 16, 2021). As the Commissioner did not raise this waiver issue, however, the Court addresses the constitutional arguments on their merits.

remainder of the statute establishing the Commissioner's role. 2022 U.S. App. LEXIS 11365, at *12. The Court found that a claimant seeking relief from a decision entered while the Commissioner served under the unconstitutional removal provision must "demonstrate that the unconstitutional provision actually caused [him] harm." 2022 U.S. App. LEXIS 11365, at *13 (citing *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021)). Speculative arguments that some theoretical different outcome might have occurred is insufficient to establish actual harm. 2022 U.S. App. LEXIS 11365 at *15.

Here, Plaintiff has failed to establish actual harm as a result of the unconstitutional removal provision, relying only on arguments as to the unconstitutionality of the provision and not addressing harm in any way. Docket No. 20 at 21-23. Accordingly, no relief is warranted. *See Kaufmann*, 2022 U.S. App. LEXIS 11365, at *15.[5]

Plaintiff is also not entitled to relief under the FVRA argument he raises. Plaintiff addresses the legal grounds for relief under the FVRA by citing to a single out-of-district case without discussing how or why it applies to the proceedings at issue. Docket No. 20 at 24-25. The Court therefore declines to address Plaintiff's FVRA argument, as the Court only addresses meaningfully developed arguments. *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 584 n.6 (D. Nev. 2013).

Even if the Court were to consider Plaintiff's argument, however, the Court is not convinced that Plaintiff's argument is meritorious. The overwhelming weight of authority addressing this issue recognizes that the FVRA contains a spring-back provision that made Acting Commissioner Berryhill's appointment valid at the time she appointed the ALJs and Appeals Council Judges. *See, e.g.*, *Thomas S. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 16091, at *8 n.2 (W.D. Wash. Jan. 28, 2022); *Chuenanan v. Comm'r Soc. Sec.*, 2020 U.S. Dist. LEXIS 80583, at *6 n.1 (W.D.N.C. May 4, 2022) (citing *Hutchens v. Kijakazi*, 2021 WL 5834409 (M.D.N.C.

---

[5] The Court notes that the *Kaufmann* case was decided throughout the pendency of the briefing on the motions currently before the Court. However, at the time Plaintiff filed his motion, several district courts, including this Court, had already issued opinions containing the same approach and analysis as that in *Kaufmann*. *See, e.g.*, *Brand v. Kijakazi*, __F.Supp.3d__, 2021 WL 5868131 (D. Nev. Dec. 10, 2021); *Ramos v. Comm'r*, 2022 WL 105108, at *3-4 (E.D. Cal. Jan. 11, 2022) (collecting cases).

Dec. 9, 2021); *Heins v. Saul*, 2020 U.S. Dist. LEXIS 136405, at *63 n.18 (N.D. Iowa June 11, 2020); *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 68 (1999).

Accordingly, the Court finds that Plaintiff is not entitled to relief on either of his constitutional arguments.

## IV. CONCLUSION

Based on the forgoing, the Court **DENIES** the motion for reversal or remand, Docket No. 20, and **GRANTS** the countermotion to affirm, Docket No. 22. The decision below is **AFFIRMED**. The Clerk's Office is instructed to **ENTER FINAL JUDGMENT** accordingly and to **CLOSE** this case.

IT IS SO ORDERED.

Dated: May 27, 2022

_____
Nancy J. Koppe
United States Magistrate Judge

13